IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Ramirez, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>Thomas Arnold Incorporated, et al.,<br><br>        Defendants. | No. CV-17-00150-PHX-SMM<br><br>**ORDER** |

Pending before the Court is the parties' stipulated motion to approve FLSA settlement and dismiss case. (Doc. 38.)

Under the reasoning set forth in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982), there are only two ways in which back wage claims under the Fair Labor Standards Act ("FLSA") can be settled or compromised by employees.[1] One, pursuant to 29 U.S.C. § 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owing to them. Id. at 1353. The second way is provided in the context of litigation brought directly by employees against their employer pursuant to § 216(b) to recover back wages. Id. When an employee brings a private action for back wages and presents to the district court a proposed settlement, the district court "may enter a stipulated judgment after scrutinizing the settlement for

---

[1] While the Ninth Circuit has not specifically addressed this issue, district courts in the Ninth Circuit have followed the reasoning set forth in Lynn's Food Stores. See, e.g., Ambrosino v. Home Depot U.S.A., Inc., No. CV 11-1319, 2014 WL 3924609 (S.D. Cal. Aug. 11, 2014); Hand v. Dionex Corp., No. CV 06-1318, 2007 WL 3383601 (D. Ariz. Nov. 13, 2007).

fairness." Id.

Outside of the FLSA context, the Court normally does not rule on a private settlement agreement negotiated between the parties. However, because this is an FLSA action against Defendants, the parties must seek approval of their settlement agreement in order to ensure its enforceability. The Court may approve the settlement if it is a fair and reasonable compromise of the issues.

Recently, the parties notified the Court that they had reached a settlement. In compliance with the FLSA, the Court ordered the parties to submit their settlement agreement for review. (Doc. 35.) Following review, the Court postponed evaluation of the settlement agreement, based on the following: "Pursuant to its obligation to scrutinize service awards carefully, the Court will order Plaintiffs' counsel to submit evidence to substantiate the [statement that each of the three named Plaintiffs 'aided substantially in providing documents and information necessary for filing the complaint, engaging in informal discovery, and obtaining resolution' and that each attended the mediation]. Only then will the Court be able to determine the propriety of the service award and the adequacy of the class representatives." (Doc. 40.) Plaintiffs have now submitted Declarations from each of the three named Plaintiffs in support of the service award. (Doc. 41.)

*The Settlement Agreement*

The parties have stipulated to a $100,000 settlement paid by Defendants, of which $33,333.33 goes to Plaintiffs' counsel, $5,064.75 goes to litigation costs, $6,000 goes to the three named Plaintiffs ($2,000 each) as a service award, and the remaining $55,601.92 will be "paid proportionally to the amount of hours each class member worked for Defendants at the tip credit rate as shown in discovery documents Defendants provided to Plaintiffs." (Doc. 38 at 5.)

Attorneys' Fees and Litigation Costs

The settlement agreement provides for $33,333.33 in attorneys' fees, an amount "justified by the representation agreement or opt-in form signed by each of the Plaintiffs

and opt-in Plaintiffs, and the uncertainty and complexity of the litigation." (Id. at 6.) Although the representation agreement provided for a 35% contingency fee, Plaintiff's counsel reduced his fee to 33 1/3%. (Id.) The settlement agreement further provides for litigation costs in the amount of $5,064.75.

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "In 'common fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method" to determine attorneys' fees. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998) (further citation omitted).[2] Under the percentage method, a court awards the attorneys a percentage of the fund "sufficient to provide class counsel with a reasonable fee." Hanlon, 150 F.3d at 1029. In this Circuit, the benchmark award is 25% of the recovery obtained. Vizcaino, 290 F.3d at 1047-48. Selection of the 25% benchmark, or any other rate, must be supported by findings that take into account all of the circumstances of the case. Id. at 1048.

Here, the Court finds a 25% award to be reasonable under the percentage method given the modest length of this litigation (less than one year) and the lack of any exceptional result for the class, extreme risk to counsel, benefits beyond the cash settlement, and extraordinary burdens on counsel. See id., at 1049-50. Further, Plaintiffs' counsel provides virtually no justification for the 33 1/3% award, citing only the representation agreement (which provides for a contingency fee in the amount of 35% of the gross settlement) and the singular, conclusory statement that this litigation was uncertain and complex. (Doc. 38 at 6.) Counsel provides no evidence (such as records or time sheets) or substantive argument to support the requested award. Therefore, the Court will decrease the award from 33 1/3% to 25%, or from $33,333.33 to $25,000. The $8,333.33 denied will be added to the net recovery of the class.

---

[2] In some cases, courts use both methods, with the lodestar method serving as a cross-check on the percentage method. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).

With respect to the request for $5,064.75 in litigation costs, the Court will limit the amount to $2,000 unless Plaintiffs' counsel substantiates the request. The $3,064.75 denied will be added to the net recovery of the class.

Service Awards

The settlement agreement provides for $2,000 service awards for each of the three named Plaintiffs. (Doc. 38 at 5-8.)

Service awards, also known as incentive awards, are distributed at the court's discretion. Rodriguez v. West Publishing Corp., 563 F.3d 948, 958 (9th Cir. 2009). Service awards are payments to class representatives for their service to the class in bringing the lawsuit. Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards are "fairly typical" and "intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action…." Rodriguez, 563 F.3d at 958. Courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe, 715 F.3d at 1163.

Class representatives are entitled to reasonable awards for their service. See Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). In determining the reasonableness of a service award, courts consider "the actions the named plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of workplace retaliation." Id. (internal quotations and further citation omitted). Also relevant is the number of class representatives, the average incentive award amount, and the proportion of the total settlement spent on incentive awards. See id., at 977-78; In re Online DVD-Rental Antirust Litigation, 779 F.3d 934, 947 (9th Cir. 2015). Staton provides a benchmark against which to measure these factors, as demonstrated by the Ninth Circuit in Online DVD-Rental:

> Here, incentive awards are $5,000, an amount we said was reasonable in Staton. $5,000 is considerably less than the average of $30,000 in Staton. There are nine class representatives, compared with the 29 in Staton.

> Finally, the $45,000 in incentive awards makes up a mere .17% of the total settlement fund of $27,250,000, which is far less than the 6% of the settlement fund in Staton that went to incentive awards. Thus, under Staton, the district court did not abuse its discretion in approving the settlement awards…

Online DVD-Rental, 779 F.3d at 947-48.

In similar fashion, this Court will use Staton as a benchmark in determining the reasonableness of the service award in this case.

Here, the number of class representatives and the average incentive award are reasonable under Staton. The service awards are $2,000 each, significantly less than the $30,000 average award in Staton, and far less than the $5,000 service awards deemed reasonable in Staton. And, there are three class representatives in this case, compared to Staton's 29.

The proportion of the total settlement spent on incentive awards, however, is unreasonable under Staton. The $6,000 service award makes up 6% of the total settlement amount, the exact percentage rejected in Staton. Staton, 327 F.3d at 948-49. Moreover, 6% is far greater than the .17% deemed reasonable in Online DVD-Rental, 779 F.3d at 947-48; far greater than the .57% deemed reasonable in In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000); and far greater than the miniscule percentages deemed reasonable by courts in this Circuit in FLSA cases with settlements of less than $1 million (see Avila v. Cold Spring Granite Company, No. CV-16-001533, 2018 WL 400315, at *2, *14 (E.D. Cal. Jan. 12, 2018) (approving service award making up 1% of $500,000 settlement); Padan v. West Business Solutions LLC, No. CV-15-00394, 2017 WL 6626358, at *1, *3 (D. Nev. Nov. 16, 2017) (approving incentive award making up 1.07% of $700,000 settlement); Bell v. Consumer Cellular, Incorporated, No. CV-15-941, 2017 WL 2672073, at *2 (D. Ore. Jun. 21, 2017) (approving incentive award making up .27% of $900,000 settlement); Saravia v. Dynamex Operations West, LLC, No. CV-14-05003, 2017 WL 1295069, at *4 (N.D. Cal. Apr. 7, 2017) (rejecting service award making up 1.5% of $500,000 settlement and instead awarding a service award making up .2% of the settlement); Millan v. Cascade

Water Services, Inc., No. CV-12-01821, 2016 WL 3077710, at *1, *13 (E.D. Cal. Jun. 2, 2016) (approving service award making up 2.3% of $150,000 settlement); Otey v. CrowdFlower, Inc., No. CV-12-05524, 2014 WL 12643008, at *2, *8 (N.D. Cal. Dec. 26, 2014) (approving service award making up 1.87% of $585,507 settlement); Ching v. Siemens Industry, Inc., No. CV-11-04838, 2014 WL 2926210, at *1, *7 (N.D. Cal. Jun. 27, 2014) (approving service award making up 1.17% of $425,000 settlement); Dickerson v. Cable Communications, Inc., No. CV-12-00012, 2013 WL 6178460, at *1, *4 (D. Ore. Nov. 25, 2013) (approving incentive award making up .72% of $550,000 settlement); Eddings v. Health Net, Inc., No. CV-10-1744, 2013 WL 3013867, at *3, *7 (C.D. Cal. Jun. 13, 2013) (approving service award making up 1% of $600,000 settlement); Saldivar v. Priority One Medical Transport, Inc., No. CV-09-04789, 2011 WL 13213889, at *2,*16 (C.D. Cal. Mar. 22, 2011) (rejecting an incentive award making up 6.97% of $215,000 settlement and instead awarding an incentive award making up 2.32% of the settlement)).[3] Thus, the Court finds that the service award is unreasonable.[4]

Still, the Court finds a reasonable service award is warranted. Between the time this lawsuit was filed and the notice of settlement (less than one year), the named Plaintiffs aver that they met multiple times with counsel in-person, provided counsel with necessary documents and information to substantiate the claims in this litigation, communicated with counsel on a weekly basis via phone and/or email, prepared for and

---

[3] The cases cited by Plaintiffs' counsel in support of the service award lend additional support to this statement. (Doc. 38 at 7-8.) In Hens v. Clientlogic Operating Corp., No. CV-05-381, 2010 WL 5490833, at *1, *2 (W.D.N.Y. Dec. 21, 2010), the court approved a service award making up 1.6% of a $2.7 million settlement, and in Glass v. UBS Financial Services, Inc., No. CV-06-4068, 2007 WL 221862, at *1, *16 (N.D. Cal. Jan. 26, 2007), the court approved an incentive award making up .22% of a $45 million settlement.

[4] The fact that the average recovery of each class member ($4,200) is more than twice the amount of each service award does not change the Court's conclusion. See Online-DVD Rental, 779 F.3d 948 (explaining that less important is the disparity between an incentive award and an individual award than the number of class representatives, the average incentive award amount, and the proportion of the total settlement spent on incentive awards).

attended the case management conference, and prepared for and attended the mediation. (Doc. 41-1 at 2-16.) With the exception of the actual mediation, the named Plaintiffs do not quantify the number of hours spent on this litigation or when they spent them. Also, the named Plaintiffs do not provide an hourly rate.

On this record, the Court finds a $300 service award for each of the three named Plaintiffs is fair and reasonable. A $900 service award will make up .9% of the total settlement amount. The $5,100 denied to the named Plaintiffs will be added to the net recovery of the class.

Payments to Class Members

The settlement agreement provides for a net recovery of $55,601.92. (Doc. 38 at 5.) The $8,333.33 denied to Plaintiffs' counsel in attorneys' fees, the $3,064.75 denied to Plaintiffs' counsel in litigation costs, and the $5,100 denied to the named Plaintiffs as a service award increase the net recovery to $72,100. The Court finds the $72,100 net recovery to be fair and reasonable.

Accordingly, based on the foregoing,

**IT IS HEREBY ORDERED** granting the parties' stipulated motion to approve FLSA settlement and dismiss case. (Doc. 38.) The Clerk of Court shall dismiss Plaintiffs' claims with prejudice and terminate this case.

**IT IS FURTHER ORDERED** awarding attorneys' fees in the amount of $25,000 and litigation costs in the amount $2,000.

**IT IS FURTHER ORDERED** awarding a $300 service award to each of the named Plaintiffs Jessica Ramirez, Laurin Godson, and Victoria Lisak.

**IT IS FURTHER ORDERED** awarding a $72,100 net recovery to the class.

Dated this 3rd day of April, 2018.

Honorable Stephen M. McNamee
Senior United States District Judge